**PANHANDLE & S. F. RY. CO. v. KORNEGAY.** (No. 202–3279.)

(Commission of Appeals of Texas, Section B. Feb. 23, 1921.)

1. **Master and servant ⬳137(3)—Failure to stop work train as customary held not negligence per se.**

Failure to stop a work train, as was customary, to permit laborers to alight at their boarding place, causing one to jump from the train after it had slowed down, held not negligence per se.

2. **Master and servant ⬳139—Failure to stop work train not proximate cause of injuries to laborer alighting.**

Where a railroad laborer knew that a work train was not going to stop as was customary but was only going to slow down, and alighted when conductor signaled the engineer to speed up, the failure to stop was not the proximate cause of his injuries in alighting.

3. **Trial ⬳253(4)—Instruction ignoring proximate cause erroneous.**

An instruction predicating liability on failure to stop a train to let plaintiff off, without taking into consideration whether failure to stop was proximate cause of injury, was erroneous.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by T. C. Kornegay against the Panhandle & Sante Fé Railway Company. Judg-

ment for plaintiff was affirmed by the Court of Civil Appeals (206 S. W. 708), and defendant brings error. Judgments of the district court and the Court of Civil Appeals reversed, and the cause remanded.

W. C. Reid, of Albuquerque, N. M., Roscoe Wilson, of Lubbock, and Madden, Trulove, Ryburn & Pipkin, of Amarillo, for plaintiff in error.

M. Fulton and Percy Spencer, both of Lubbock, and W. D. Benson, of Breckenridge, for defendant in error.

KITTRELL, J. The plaintiff was a laborer in the service of the defendant railway company. There are many unnecessary allegations preliminary to a statement of the facts which were necessary to be set forth in order to understand the real issues in the case.

The plaintiff boarded and slept at a boarding place near a "gyp" pit about 1.8 miles north of the town of Lubbock, to which town the work train was returning after distributing ballast, some 30 miles or more up the road, north. It is evident that the train had but a few minutes to reach Lubbock in, before being in peril of the penalties of the federal 16-hour law. The plaintiff alleged as follows:

"That the defendant had selected, designated, and provided a place on its right of way near the rock pit as and for a place for trackmen and workmen to board, and had there a boarding car and eating car in charge of one of its employees; and the plaintiff, the said T. C. Kornegay, had, during the entire time he had been so employed by the defendant, boarded and slept at said place.

"That it was a rule of the defendant to stop said work trains opposite the said boarding cars, to permit the employees whose duties for the company required them to board said work trains, to get on and off the same, and to load and unload their tools, in going to and returning from work, and to get off the train to go to said camp for sleeping and eating, and such stops were ordinarily and customarily made by the work trains of the defendant at the said camping place, and all other camping places of like nature, used by the defendant. That all persons connected with and operating the said work trains had full knowledge of these facts, and all of the employees boarding at said place expected to and prepared to get off at the said places."

The conductor knew the plaintiff and another party in the same caboose wanted to get off at the "gyp" pit, which latter party the conductor woke up as the train drew near the "gyp" pit. The plaintiff did not ask the conductor to stop, and the conductor did not tell him he would stop. On the contrary, he told both plaintiff and the other party that he would not stop, but stated he would "slow down," and, pursuant to such statement, gave the "slow down" signal, and

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the speed of the train was checked, and plaintiff's companion got off safely.

Plaintiff alleges: That he hesitated about getting off, owing to the speed at which the train was moving, and that when he hesitated the conductor signaled the engineer to speed up, and immediately, in a gruff, insulting, and profane manner, said to plaintiff, "If you are going to get off, get off." That thereupon plaintiff took hold of the rail by the side of the side door of the caboose and went down on the steps (which were about eight inches wide), preparing to get off, when he realized the train was running fast, but thought he would jump in a running position and catch a little, and not get hurt; when the engineer, having obeyed the signal to speed up, the slack that had been caused by the slowing down of the train was taken up with a jerk, and plaintiff was thrown to the ground and injured.

The preceding summary of the facts is sufficient for an understanding of the opinion.

#### Opinion.

In our judgment the pleadings of defendant did not authorize the giving of special charge 7 requested by defendant, and manifestly the answer of the jury to the issue of contributory negligence made harmless the refusal to give plaintiff's special charge No. 2; hence both of these questions were properly disposed of by the Court of Civil Appeals.

The only error alleged which we deem it necessary to discuss is that relating to giving of special charge No. 1 requested by plaintiff in the trial court. We are of the opinion that the giving of that charge is reversible error. That there was a boarding place near the "gyp" pit, opposite which it was customary to stop the train, was not denied; hence there was no issue on that point.

Neither was there any issue on the point as to whether the train failed to stop, because the plaintiff not only knew it would not stop, but had not asked that it be stopped, when he was told it would only slow down, nor at any other time. He appears to have been content if it "slowed down," which it did. The only evidence offered in support of his allegations about the custom of laborers getting off at the "gyp" pit was as follows:

"It was the custom of the work trains to stop at this point to let the laborers on and off."

[1-2] Conceding for the sake of argument that the allegations of plaintiff's petition concerning the "gyp" pit, and the custom of trains to stop there, was equivalent to the allegations that it was their duty to stop there, failure to stop was not negligence per se. The plaintiff could recover only for such injuries as were the proximate result of the negligence of defendant.

[3] It cannot be said that the failure to stop at the "gyp" pit was the proximate cause of the injury. Plaintiff knew the train was not going to be stopped, but only be slowed down, and, though he saw his companion alight in safety, he hesitated, owing to the speed of the train, whereupon the conductor gave the speed-up signal, after which plaintiff got off. It has been held by courts of many states, including Texas, that it is negligence for a passenger to jump from a moving train where his only reason for doing so is the failure of the train to stop at the station. Fordyce v. Allen (Tex. Civ. App.) 26 S. W. 437; authorities cited in American Digest, vol. 9, col. 1490.

While there was no denial of plaintiff's testimony that his boarding place was at the "gyp" pit, and that it was the custom of work trains to stop there, yet the court submitted those undisputed facts to the jury as issues to be found by them. He also submitted to them the issue whether the train failed to stop, though it was undisputed that it did not stop, and that plaintiff knew it would not stop; yet the jury was in effect told that if it was the custom to stop, and that the plaintiff was injured in getting off, they would find for him, without regard to the failure to stop being the proximate cause of the injuries, as evidently it was not.

For the error in giving said special charge No. 1, requested by plaintiffs, we recommend that the judgment of the district court and Court of Civil Appeals be reversed, and the cause remanded for another trial.

McCLENDON, J. I concur in the conclusion that it was error to give plaintiff's special charge No. 1, and that for that reason the judgment should be reversed and the cause remanded. This charge authorized the jury to base a finding of actionable negligence upon the failure of defendant to stop the train at the "gyp" pit. The evidence conclusively shows that plaintiff was aware of the fact that the train would not stop there upon the occasion in question, whatever may have been the general rule regarding such stop. Failure to stop was therefore not a proximate cause of plaintiff's injury, and, this appearing from the uncontradicted evidence, it was error to submit this issue to the jury.

The other questions presented by the application for writ of error, in my opinion, have been correctly determined by the Court of Civil Appeals.

PHILLIPS, C. J. The judgment recommended in this case by the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.